UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WESLEY ROBERT HICKMAN, | ) | Case No. 1:23-cv-2078 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) | Magistrate Judge Reuben J. Sheperd |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) ) ) | |

**OPINION AND ORDER**

Plaintiff Wesley Robert Hickman applied for supplemental security income. The Commissioner denied his application, both initially and on reconsideration. Plaintiff appealed, but the appellate council denied his request for review. Then, Plaintiff sought review in federal court. The Magistrate Judge recommends that the Court affirm the Commissioner's decision, and Plaintiff objects to that recommendation. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections (ECF No. 14), **ADOPTS** the Report and Recommendation (ECF No. 13), and **AFFIRMS** the Commissioner's denial of Plaintiff's application for social security disability insurance.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Hickman applied for disability benefits on May 20, 2022, alleging a disability onset date of July 7, 2021. (ECF No. 6, PageID #245.) He sought disability due to several conditions, including lower back injury, severe arthritis of the spine, post-traumatic stress disorder, depression, anxiety, hypertension, and respiratory

issues. (*Id.*, PageID #245–59.) His claim was denied initially and on reconsideration. (*Id.*, PageID #144-47; 155-58.) Plaintiff requested a hearing before an administrative law judge. (*Id.*, PageID #159.)

On June 15, 2023, the ALJ issued a written decision finding that Mr. Hickman is not disabled. (*Id.*, PageID #44–59.) The Appeals Council denied his request for review on August 31, 2023. (*Id.*, PageID #28–30.)

### A. Evidence Before the ALJ

At the hearing before the administrative law judge, the record included the following materials, as relevant here.

#### A.1. Relevant Medical Records

Mr. Hickman's medical records indicate that he suffered from chronic post-traumatic stress disorder, suicidal thoughts with attempted suicide, and was a high suicide risk. (*Id.*, PageID #453-55, 814.) Mr. Hickman engaged in mental health treatment for several years. (ECF No. 6, PageID #421.)

#### A.2. Mr. Hickman's Testimony

Mr. Hickman testified that he lives alone and only leaves the house to attend medical appointments. (ECF No. 6, PageID #69, 80.) While Mr. Hickman can drive, he prefers not to because he experiences road rage. (*Id.*, PageID #79.)

Mr. Hickman testified that he struggles to retain employment because he "can't get along with anybody." (*Id.*, PageID # 73.) Recalling his involved in "a few incidents" while working at the steel mill, Mr. Hickman recounted various arguments with co-workers. (*Id.*) Ultimately, Mr. Hickman was fired from that position after similar incidents kept occurring. (*Id.*, PageID #74.)

2

Mr. Hickman testified that his psychological conditions affect him more than his physical conditions. (*Id.*) These problems limit his "whole life," permeating into his relationship with his wife, children, parents, and brother. (*Id.*) Mr. Hickman does not have friends and does not talk to many people. (*Id.*) To address his mental health struggles, Mr. Hickman has two separate counselors and has appointments two to three times a month. (*Id.*, PageID #76–77.) Mr. Hickman was not diagnosed with post-traumatic stress disorder until 2012, but he believes those issues began in 2003. (*Id.*, PageID #75.) Mr. Hickman explained that he has trouble sleeping, because he uses a CPAP machine, suffers from nightmares and has a REM sleep behavior disorder. (*Id.*, PageID # 75.) He also suffers from crying spells and panic attacks on a consistent basis. (*Id.*, PageID #76.) Additionally, he revealed that he struggles with suicidal ideation. *Id.*

Previously, Mr. Hickman took prescription medication for his psychological condition but stopped due to adverse side effects. (*Id.*, PageID #77.) The medication caused him to become emotionally numb and turned him into a "walking zombie." (*Id.*)

### A.3. Vocational Expert, Gene Burkhammer, Testimony

A vocational expert, Gene Burkhammer, testified that Mr. Hickman's work history included: (1) construction worker, heavy exertion, SVP-4, DOT 869.664-014; (2) mold laminator, medium exertion, SVP 4 DOT 806.684-010; (3) strand-machine operator, medium exertion, SVP 4, DOT 616.682-034; (4) crane operator, medium exertion, SVP 4, DOT 921.683-022. (*Id.*, PageID #83–84.) Burkhammer testified that a hypothetical individual with similar limitations could perform the jobs of a puller,

3

hand packager, and general laborer, equating to approximately 200,000 jobs in the national economy. (*Id.*, PageID #85).

A hypothetical individual of Mr. Hickman's age, education, background, work experience, and psychological and physical conditions could perform Mr. Hickman's past relevant work with the exception of the construction worker position. (*Id.*, PageID #85–86.) If this hypothetical individual was further limited by having intermittent outbursts and conflict with coworkers and the public once or twice a month, that hypothetical worker could perform Mr. Hickman's past relevant work, except for the construction work. (*Id.*, PageID #86–87.)

Finally, Burkhammer testified that employers would find two or more absences a month excessive. (*Id.*, PageID #88.)

### B. ALJ's Decision

After taking testimony and considering the record, the administrative law judge issued a written decision denying Mr. Hickman's application. (*Id.*, PageID #40–59.) The ALJ conducted the customary five-step inquiry under 20 C.F.R. § 404.1520(a) to determine whether Mr. Hickman was disabled.

At step one, the ALJ found that Mr. Hickman "has not engaged in substantial gainful activity since July 7, 2021." (*Id.*, PageID #47.) At step two, the ALJ determined that Mr. Hickman has the following severe impairments: "Degenerative Disc Disease of the Lumbar Spine; Anxiety Disorder; Post-traumatic Stress Disorder; Intermittent Explosive Disorder; and Obstructive Sleep Apnea." (*Id.*) At step three, the ALJ found Mr. Hickman does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments

4

listed in 20 C.F.R. § 404.1520(d). (*Id.*, PageID #49.) In making her findings, the ALJ considered whether the Paragraph B criteria of the mental listings were satisfied. (*Id.*, PageID #50.) The satisfaction of Paragraph B criteria requires an extreme limitation of one, or marked limitation of two, areas of mental functioning. *See* 20 C.F.R. § 404.1520.

> The ALJ found:
>
> - In understanding, remembering, or applying information, the claimant has no limitation.
>
> - In interacting with others, the claimant has a moderate limitation.
>
> - With regard to concentrating, persisting, or maintaining pace, the claimant has a mild limitation.
>
> - As for adapting or managing oneself, the claimant has a moderate limitation.

(*Id.*, PageID #48.) The ALJ relied on Mr. Hickman's report that he:

> [L]ives alone in a home; . . . cares for his dogs, independently manages his personal care, can prepare a meal, can mow his yard . . . travels by driving a car, shops by telephone, can pay bills and independently manage his finances, watches football on [TV], socializes with others in person, on the [phone], by email, and by video chat. . . .

(*Id.*, PageID #50.)

The ALJ found that Mr. Hickman's abilities to understand, remember, carry out simple tasks, ask questions, provide explanation, and to use reason and judgment to make simple work-related decisions support her finding. (*Id.*, PageID #51.) Because Mr. Hickman's mental impairments do not include two marked limitations or one extreme limitation, the ALJ found that the Paragraph B criteria were not satisfied. *Id.*

5

At step four, the ALJ found that Mr. Hickman had the residual functional capacity to perform medium work:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except he would retain the ability to respond appropriately to coworkers and supervisors in a goal-oriented setting; he could tolerate only brief public contact and brief interactions with coworkers that would be sufficient to learn a job and exchange appropriate work-related information; he could adapt to infrequent changes that are explained in advance . . . .

(*Id.*, PageID #51–52.)

Finally, at step five, the ALJ found that Mr. Hickman can perform past relevant work that does not require activities precluded by his residual functional capacity. (*Id.*, PageID #56.) The ALJ determined that Mr. Hickman can perform other jobs that exist in significant numbers in the national economy given his age, education, work experience, and residual functional capacity. (*Id.*, PageID #56–59.) Therefore, the ALJ found that Mr. Hickman was not disabled and denied his application. (*Id.*, PageID #59.) The Appeals Council denied further review, rendering the ALJ's decision final on June 15, 2023. (*Id.*, PageID #28.)

### C.  Report and Recommendation

Plaintiff timely filed this action on October 23, 2023, seeking judicial review under 42 U.S.C. § 405(g). (ECF No. 1.) The Magistrate Judge issued a report and recommendation that Tte Court affirm the ALJ's decision denying Mr. Hickman's application. (ECF No. 13.) Plaintiff makes one argument on appeal: "[t]he ALJ's [determination of residual functional capacity] is unsupported by substantial evidence because he failed to properly apply the psychiatric review technique." (ECF No. 9, PageID #2.)

On appeal to federal court, the Magistrate Judge determined that the ALJ properly evaluated Mr. Hickman's mental limitations under the Paragraph B criteria and incorporated those articulated, specific reasons in her findings, as 20 C.F.R. § 404.1520(a) requires. (ECF No. 13, PageID #1159.) The Magistrate Judge noted that Mr. Hickman "does not cite any support, statutory or otherwise, for his proposition that the ALJ's evaluation is lacking . . . the only citation offered is *Moore v. Barnhart,* 405 F.3d 1208, 1213 (11th Cir. 2005) . . . [without any] explanation." (*Id.*) According to the Magistrate Judge, in *Moore* the ALJ did not analyze two of the four Paragraph B criteria, but here the ALJ's decision included findings for all four of the Paragraph B criteria. (*Id.*, PageID #1159–60.)

The Magistrate Judge explained the ALJ's decision was consistent with the specific Paragraph B findings regarding the degree of limitation in each of the four functional areas under 20 C.F.R. § 404.1520(c) and (e)(4). (*Id.*, PageID #1160.) The Magistrate Judge found that the analysis was consistent with the ALJ's requirement to incorporate pertinent findings and conclusions and "show the significant history, including, examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments." 20 C.F.R. § 404.1520(a)(e)(4).

### D. Plaintiff's Objection

Plaintiff timely objected to the Magistrate Judge's report and recommendation, raising a sole objection. (ECF No. 14.) In his objection, Plaintiff largely reiterates arguments raised in his brief on the merits. (ECF No. 9.) He objects that the Magistrate Judge incorrectly found that substantial evidence supported the ALJ's

7

decision because the ALJ failed properly to apply and explain the Paragraph B criteria findings during the psychiatric review technique. (ECF No.14, PageID #1165.)

## ANALYSIS

The Court reviews de novo the portions of a Magistrate Judge's report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir. 1981). "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation." *Scott v. Saul,* No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at *12-13 (N.D. Ohio May 14, 2021); *see* 28 U.S.C. 636(b).

When a party objects, review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and by reviewing any legal errors. *Wright v. Massanari,* 321 F.3d 611, 614–15 (6th Cir. 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

### I. Paragraph B Criteria

The Social Security Act provides for a "special technique" when evaluating the severity of mental impairments at steps two and three. 20 C.F.R. § 404.1520(a). At

step two, the administrative law judge evaluates the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." *Id.* § 404.1520a(b)(1). If the claimant has an impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" concerning "four broad functional areas:" (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). These four functional areas are referred to as the Paragraph B criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq*.

The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area is rated using the following four-point scale: none, one or two, three, four or more. *Id.* If the first three functional areas are rated as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe, and the claimant is conclusively not disabled. *Id.* § 404.1520a(d)(1). Otherwise, the impairment is considered severe, and the ALJ will proceed to step three. *See id.* § 404.1520a(d)(2).

At step three, the ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id.* The Paragraph B criteria are satisfied by a showing of at least two of the following functional limitations: (1) a marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining

9

concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's residual functional capacity and move on to steps four and five. 20 C.F.R. § 404.1520a(d)(3).

The regulations require that the ALJ's written decision "incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(2). The ALJ's decision must refer to the "significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* Also, the decision must "include a specific finding as to the degree of limitation in each of the functional areas." *Id.* At step three, the ALJ's decision must "record the presence or absence of the criteria and the rating of the degree of functional limitation." *Id.* § 404.1520a(d)(2). The special technique that the regulations prescribe is a diagnostic aid, not a procedural right vested in the claimant. *Rabbers v. Commissioner Soc. Sec. Admin*, 582 F.3d 647, 657 (6th Cir. 2009). An ALJ's failure to address the Paragraph B criteria is harmless if the record contains enough information for the reviewing court to determine whether the claimant's mental impairment satisfies the Paragraph B criteria. *Id.*

## II. The ALJ's Application of the Paragraph B Criteria

Plaintiff objects to the Magistrate Judge's recommendation that the ALJ properly applied the special technique under 20 C.F.R. § 404.1520(a). (ECF No.14.)

10

Plaintiff argues that while the ALJ rated the degree of functional limitations from mental impairments, the ALJ failed to explain how she arrived at those conclusions and failed to consider all relevant evidence and the effect of certain factors outlined in 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1). (ECF No.14, PageID #1165.) Further, Plaintiff claims that the evidence summarized by the ALJ and the Magistrate Judge offers no narrative rationale or explanation of Paragraph B findings. (*Id.*) To support his position, Plaintiff relies on cases from outside the Sixth Circuit. (*Id.*)

The Magistrate Judge directly and thoroughly addressed the alleged Paragraph B deficiency in the ALJ's opinion. The Magistrate Judge identified the portion of the ALJ's opinion where she found as follows regarding the Paragraph B criteria:

- In understanding, remembering, or applying information, the claimant has no limitation.

- In interacting with others, the claimant has moderate limitation.

- With regard to concentrating, persisting, or maintaining pace, the claimant has a mild limitation.

- As for adapting or managing oneself, the claimant has experienced moderate limitation.

(ECF No.13, PageID #1160.) Then, the ALJ followed these findings with an analysis of the record and evidence used in making the Paragraph B finding:

> The claimant reported that he lives alone in a home; additionally, he reported he cares for his dogs, independently manages his personal care, can prepare a meal, can mow his yard for up to 30 mins, travels by driving a car, shops by telephone, can pay bills and independently manage his finances, watches football on television, socializes with

11

others in person, on the telephone, by email, and by video chat, has problems handling stress and change in routine. Further, he reported that he does not do well with following written or spoken instructions. During the hearing, he testified that he experiences problems with anger, nightmares, sleep disturbances, and ro[ad] rage. Additionally, he testified that he experiences problems with energy throughout the day, and, while he attends counseling sessions 3 times a month, he testified that he does not take medications, due to experiencing side effects in the past. Moreover, the undersigned notes that the claimant did not require the questions that were posed to him during the hearing to be restated or rephrased.

(*Id.* (citations omitted).)

In the report and recommendation, the Magistrate Judge recognizes that these findings are consistent with the requirements of 20 C.F.R. § 404.1520a(c) and (e)(4) and that the analysis is consistent with the ALJ's requirement to incorporate findings "show[ing] the significant history including, examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments(s)." *Id.*

On de novo review based on Plaintiff's objection, the Court agrees. The sources of evidence the ALJ relied on included medical opinion evidence, objective observations, Mr. Hickman's subjective statements, and his reported daily activities. After analyzing this evidence, the ALJ determined that Mr. Hickman's mental impairments were not disabling, while providing for limitations in Mr. Hickman's residual functional capacity to account for the impairments that she found the record did support. (ECF No.6, PageID #51–56.)

Finally, the Court notes that a "non-specific objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the

part of the magistrate judge and results in duplication of effort on the part of the district court." *Joseph v. Berryhill,* No. 3:16-cv-02259, 2017 WL 3736787, at *9 (N.D. Ohio Aug. 30, 2017). Here, Plaintiff reiterates his argument that the ALJ failed properly to apply the special technique in determining his residual functional capacity and make a specific objection to the Magistrate Judge's analysis. In any event, on the merits, the Court agrees that substantial evidence supports the ALJ's determination of Mr. Hickman's residual functional capacity.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections (ECF No. 14). **ADOPTS** the Report and Recommendation (ECF No. 13), and **AFFIRMS** the Commissioner's denial of social security disability insurance.

**SO ORDERED.**

Dated: November 29, 2024

J. Philip Calabrese
United States District Judge
Northern District of Ohio